UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE NASHVILLE DIVISION

Joshua Gracin

    *Plaintiff Pro Se*

vs.

Rutherford County, Tennessee;
Tennessee Department of Human Services / Child Support Services (CSS);
Judge Terry Fann, in official capacity;
Attorney Evan Cope, in his individual capacity and in his official capacity as City Attorney for La Vergne of Rutherford County;
Attorney Katharine Driver, in her individual capacity;
John/Jane Does 1–5,

    *Defendants*

RECEIVED FEB 04 2025 US DISTRICT COURT MID DIST TENN

## **VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES**

Plaintiff Joshua Gracin, proceeding pro se, submits this Complaint under 42 U.S.C. § 1983 and the Fourteenth Amendment, alleging ongoing violations of his constitutional rights in Rutherford County, Tennessee. In support, Plaintiff states as follows:

### I. INTRODUCTION

1.     Fundamental Parental Rights Under Siege

• The Supreme Court has long recognized that parents have a fundamental liberty interest in the care, custody, and control of their children. *Troxel v. Granville, 530 U.S. 57, 66 (2000); Santosky v. Kramer, 455 U.S. 745, 753 (1982)*.

• The Supreme Court has likewise affirmed that '[t]he right to personal choice regarding family life is a fundamental liberty interest protected by the Fourteenth Amendment.' *Obergefell v. Hodges, 576 U.S. 644, 675 (2015)*.

• Plaintiff, the primary caretaker of his minor child since May 2023, has been subjected to systemic due process violations in Rutherford County, Tennessee, where local authorities have threatened forced separation and undermined basic procedural safeguards.

2.  Missouri Jurisdiction Under the UCCJEA

- Since May 2023, the child has resided exclusively in Missouri, satisfying the six-month "home state" requirement under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). On February 14, 2024, Plaintiff filed a formal jurisdiction challenge in Missouri, securing a hearing date of April 15, 2025.

- Under Tenn. Code § 36-6-222, Tennessee courts must stay custody proceedings if another state's court is properly exercising jurisdiction. Nevertheless, Rutherford County scheduled a February 25, 2025 trial—racing to resolve motions/child support/disputes/custody before Missouri can rule—flouting due process (*Mathews v. Eldridge, 424 U.S. 319*) and disregarding the UCCJEA's cooperative framework.

- See In re Adoption of *A.M.H., 215 S.W.3d 793, 800 (Tenn. 2007)* ("Tennessee courts must defer to the home state's jurisdiction under the UCCJEA to avoid conflicting custody determinations.").

3.  Civil Contempt as Entrapment

- On February 15, 2024—just one day after Plaintiff's Missouri filing— Rutherford County held a contempt hearing. Plaintiff had legal counsel who was prepared to provide actual documentation that would have purged Plaintiff of the alleged contempt in the same proceeding, meaning no contempt finding was necessary. Judge Terry Fann, however, refused to consider this documentation. He insisted the Court must first find Plaintiff in contempt and then hold a subsequent purge hearing, which required in-person attendance, thus risking immediate arrest.

- This contravenes Hicks v. Feiock, 485 U.S. 624 (1988), which underscores that civil contempt should be remedial, not punitive. By forcing Plaintiff to appear in person for any purge hearing and risk arrest, the Court effectively set a no-win scenario, depriving Plaintiff of a meaningful opportunity to comply.

- See Turner v. Rogers, 564 U.S. 431, 447–48 (2011) (holding that due process requires meaningful procedural safeguards, including adequate notice and the opportunity to be heard, in civil contempt proceedings

4.  Tennessee Department of Human Services/Child Support Services (CSS) Misconduct

- Defendant CSS refused to conduct mandatory mediation, prematurely "closed" Plaintiff's administrative appeals, and imposed punitive measures (license suspensions, credit reporting, passport flags) without sufficient notice or a fair chance to contest alleged arrears. Such failures violate the minimal standards of due process set out in *Mathews v. Eldridge, 424 U.S. 319 (1976)*.

- *Cf. Goldberg v. Kelly, 397 U.S. 254, 264 (1970)* requiring a pre-deprivation hearing for welfare benefits, a principle that similarly applies to punitive child support enforcement measures. Drawing on Goldberg v. Kelly underscores the necessity of a prompt, fair hearing before depriving an individual of critical rights or resources.

- Plaintiff attempted to exhaust administrative remedies through mediation requests and appeals, yet CSS effectively blocked any resolution—making further "exhaustion" impossible or futile. Plaintiff only made aware recently about the violations against his due process rights.

5. Systematic Notice Failures & E-File Irregularities

- After April 2024, Plaintiff's e-file notifications for filings by Attorney Evan Cope or Attorney Katharine Driver suddenly ceased, although Plaintiff's own filings continued generating immediate confirmations. Plaintiff missed key hearings due to this selective failure, and in some instances, received mailed notices only after the hearing date or three days before a hearing in Tennessee was to take place.(See Exhibit A for e-file notification comparisons and Exhibit B for emails to Cope regarding these irregularities).

- Such failures violate the standard set forth in *Greene v. Lindsey, 456 U.S. 444, 455 (1982)*, which requires that notice be 'reasonably calculated to apprise interested parties' of the proceedings

- These irregularities materially prejudiced Plaintiff's defense: He could not timely respond to motions, request continuances, or attend hearings, resulting in repeated "no-shows" on record—bolstering Defendants' position at the expense of Plaintiff's due process rights.

6. Forced Child Separation

- Plaintiff and the child share a close bond, with the child preferring to remain in Missouri. The ongoing civil contempt warrant, combined with in-person demands, threatens an immediate arrest scenario if Plaintiff enters Tennessee—leading to a forced separation. Troxel emphasizes the constitutional protection of the parent-child relationship, which Defendants have undermined through entrapment tactics.

7. Ongoing Filings Despite UCCJEA Challenge

- Even after Plaintiff's jurisdiction motion in Missouri, Attorney Cope and Attorney Driver continued filing motions and advancing the Tennessee proceedings—ignoring the mandatory stay requirement under Tenn. Code § 36-6-222. This conduct further violated Plaintiff's due process and civil rights, as it advanced conflicting litigation in direct contravention of Missouri's pending jurisdictional authority.

8. Gender Discrimination

- Plaintiff alleges a pattern of gender-based bias, with Rutherford County showing reluctance to recognize a male as a capable, custodial caretaker. The Court's refusal to accommodate remote hearings or weigh the child's stable environment in Missouri—while fast-tracking proceedings against Plaintiff—exemplifies potential equal protection violations.

- Such disparate treatment based on gender contravenes *Mississippi University for Women v. Hogan, 458 U.S. 718, 724 (1982)*, where the Court condemned 'fixed notions concerning the roles and abilities of males and females.

9. Retaliatory Prosecution

- Defendants' punitive actions, including scheduling hearings to sabotage Plaintiff's career and falsifying notices, constitute retaliation for Plaintiff's protected speech— namely, his ethics complaint against Defendant Cope and challenges to child support calculations. These adverse actions began immediately after Plaintiff's ethics filing and reflect a pattern of intentional harm, violating the First Amendment. See *Hartman v. Moore, 547 U.S. 250, 256(2006)*

10. Damages & Relief

- As an entertainer, Plaintiff has lost critical income and professional opportunities due to the threat of arrest, compounding emotional distress. The child also stands to suffer psychological harm from a sudden custodial disruption. Accordingly, Plaintiff seeks substantial compensatory and punitive damages, detailed below, to reflect the gravity of the alleged constitutional deprivations and to deter future misconduct.

   Punitive damages are justified under BMW of N. Am., Inc. v. Gore, 517 U.S. 559 (1996), due to Defendants' intentional and retaliatory conduct, including weaponizing court processes to target Plaintiff's livelihood and parental role. Such egregious misuse of state authority warrants punitive sanctions to deter future abuses. *Bogan v.Cityof Boston, 489 F.3d 417 (1st Cir.2007)*

11. Statement of Good Faith Concerning Child Support

- This federal action is not an attempt to evade any legitimate child support responsibilities. Rather, it arises because Plaintiff challenged the accuracy of the amounts claimed—only to face swift and excessive retaliation by state actors, prompting the due process and constitutional violations detailed herein.

12. Addressing Federal Jurisdiction and State Proceeding

Younger Abstention Does Not Apply:

Plaintiff does not seek to enjoin or invalidate a final state court judgment. Instead, this action challenges *ongoing* procedural violations that deny Plaintiff due process and equal protection under the Fourteenth Amendment. Younger abstention is inapplicable where, as here, state actors engage in bad-faith tactics to undermine constitutional rights. *Trainor v. Hernandez, 431 U.S. 434 (1977)*. The state court's refusal to stay proceedings under the UCCJEA, coupled with its refusal to allow Plaintiff to purge contempt in a single hearing, selective e-file failures, and coercive insistence on in-person appearances despite a pending arrest warrant, demonstrates a pattern of harassment and procedural entrapment. Federal intervention is warranted to halt these abuses, which the state court has repeatedly ignored despite Plaintiff's exhaustion of state remedies (e.g., motions to stay, appeals, and mediation requests).

Sprint Communications, *Inc. v. Jacobs, 571 U.S. 69, 78 (2013)* (Younger applies only to state proceedings implicating important state interests, which are absent here given the bad-faith tactics).

Rooker-Feldman Doctrine Is Not a Bar:

This action does not ask the Court to review or reverse a final state court order. Rather, it seeks injunctive and declaratory relief to stop *ongoing* constitutional violations in state proceedings, including denial of notice, refusal to honor the UCCJEA's jurisdictional framework, and forced separation of Plaintiff from his child. Under Exxon *Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005)*, Rooker-Feldman applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments." Here, there is no final judgment to "lose" only a procedural gauntlet designed to deprive Plaintiff of his parental rights and livelihood.

Irreparable Harm Justifies Federal Intervention:

The state court's actions have created an imminent risk of irreparable harm, including arrest, forced separation from Plaintiff's child, and career sabotage through public contempt proceedings. These harms cannot be remedied through state appeals, as the state court has already denied Plaintiff's motions to stay, quash warrants, and correct e-file irregularities (see Exhibit D). Federal courts have a duty to act when state processes fail to provide minimal due process. *Mathews v. Eldridge, 424 U.S. 319 (1976)*.

Federal Question Jurisdiction Is Clear:

Plaintiff's claims arise under 42 U.S.C. § 1983 and the Fourteenth Amendment, alleging systemic violations of procedural due process, equal protection, and parental rights. The relief sought—declaratory judgments, injunctions halting unconstitutional state proceedings, and damages for constitutional injuries—falls squarely within this Court's authority under 28 U.S.C. § 1331 and § 1343.

13. Systematic Efforts to Jeopardize Plaintiff's Livelihood

- In addition to threatening Plaintiff's ability to maintain custody of the minor child, Defendants' enforcement tactics have grown into a systematic campaign aimed at undermining Plaintiff's professional career. As an entertainer relying on public performances and industry bookings, Plaintiff must routinely navigate schedule conflicts, venue obligations, and promotional demands. Yet Defendants have turned ordinary civil contempt procedures into a weapon—utilizing sudden, short-notice actions, refusal of remote participation, and the looming risk of public arrest to cast Plaintiff as an unreliable performer. This chilling effect extends well beyond a mere "debt enforcement" measure: major events and their organizers now view Plaintiff as a potential liability, fearing negative publicity or abrupt disruption. By engineering an atmosphere in which Plaintiff could be publicly seized at any high-profile engagement, Defendants have deliberately distorted the normal purpose of civil contempt—coercing compliance—into a mechanism for career sabotage and public humiliation. These orchestrated tactics further confirm that Defendants' motivations lie not in ensuring lawful support procedures, but in maximizing damage to Plaintiff's professional reputation, compounding the constitutional deprivations laid out in this Complaint.

## II. JURISDICTION AND VENUE

14. Subject Matter Jurisdiction

- This Court possesses jurisdiction under 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 1983 (civil rights), as Plaintiff alleges Fourteenth Amendment violations. Jurisdiction is also proper under 28 U.S.C. § 1343 for civil rights actions.

15. Venue

- Venue lies in this District under 28 U.S.C. § 1391(b) because the acts/omissions giving rise to Plaintiff's claims occurred in Rutherford County, Tennessee, within the Middle District of Tennessee.

16. Supplemental Jurisdiction

- The Court may exercise supplemental jurisdiction over state-law claim (including Tenn. Code § 36-6-222) pursuant to 28 U.S.C. § 1367.

## III. PARTIES

17. Plaintiff Joshua Gracin

- A pro se litigant residing in Pacific/Franklin County, Missouri, acting as the primary caretaker for the minor child since June 2023.

18. Defendant Rutherford County, Tennessee

- A municipality accountable for court policies, procedures, and customs, sued under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

19. Defendant Tennessee Department of Human Services / Child Support Services (CSS)

- Oversees child support enforcement. Plaintiff asserts CSS violated process via withheld mediation, closed appeals, and punitive enforcement, ignoring *Mathews v. Eldridge* safeguards.

20. Defendant Judge Terry Fann (in official capacity)

- Presiding judge over relevant Rutherford County proceedings. Alleged to have facilitated entrapment by refusing a same-hearing purge option, pushing in-person appearances despite an active contempt warrant, and disregarding the UCCJEA stay requirement.

21. Defendant Attorney Evan Cope

- Sued in individual capacity and official capacity as City Attorney for La Vergne, within Rutherford County. Alleged to have used local influence to continue filings after the UCCJEA challenge, manipulate e-file notices, and accelerate adverse proceedings against Plaintiff.

22. Defendant Attorney Katharine Driver (individual capacity)

- An attorney working with or under Cope. Alleged to have joined the same litigation tactics—continuing to file motions ignoring the Missouri challenge and contributing to e-file notification failures.

23. John/Jane Does 1–5

- Unknown court clerks, CSS staff, or local officials who may have aided or abetted the violations. Plaintiff reserves the right to amend upon discovering their identities

### IV. FACTUAL ALLEGATIONS

24. Missouri UCCJEA Filing & Child's Home State

- Since May 2023, the child has resided in Missouri for more than six consecutive months, making Missouri the child's "home state" under the UCCJEA. On February 14, 2024, Plaintiff filed a motion in Missouri, obtaining a hearing date of April 25, 2025.

- Under Tenn. Code § 36-6-222, Rutherford County was required to stay proceedings. Instead, it set a February 25, 2025 trial, effectively usurping Missouri's rightful jurisdiction.

25. Civil Contempt Hearing (February 15, 2024)

- The day after Plaintiff invoked Missouri's jurisdiction, Rutherford County convened a contempt hearing. Plaintiff's counsel had actual documentation that would have purged Plaintiff of the alleged contempt in the same proceeding, meaning no contempt finding was necessary, but Judge Terry Fann refused to consider it. Instead, he insisted on first adjudging Plaintiff in contempt before scheduling a separate purge hearing that must be in person, guaranteeing a risk of immediate arrest.

- This two-step approach defies the remedial purpose of civil contempt recognized in *Hicks v. Feiock*, 485 U.S. 624, because it effectively punishes Plaintiff prior to any chance to remedy the alleged contempt.

26. Continuing Filings Post-UCCJEA

- Even after the Missouri action commenced, Attorney Cope and Attorney Driver continued filing motions—facilitating the Rutherford County court's ongoing proceedings. Plaintiff contends these actions ignored the mandatory stay, violating his due process and assisting Rutherford County in prematurely deciding custody issues.

27. January 10 & 24, 2025 Hearings & Late Notices

- Hearings were scheduled on January 10, 2025, then moved to January 24, 2025, with no timely notification to Plaintiff. Physical notices arrived after the hearing date in at least one instance, leaving Plaintiff recorded as a "no-show." (See Exhibit C for examples of late-arriving notices.)

- Because of these late notices (combined with the e-file breakdown), Plaintiff missed opportunities to respond, request a continuance, or appear—systemically prejudicing his defense.

28. E-File Irregularities

- From 2019 until April 2024, Plaintiff consistently received e-file notices for all motions—including those from opposing counsel. However, once Cope took over and Plaintiff proceeded pro se, Plaintiff stopped receiving e-file notices for Cope's or Driver's motions after 4/02/24 —while still receiving confirmations for his own filings.

- This selective e-file failure severely damaged Plaintiff's ability to defend his rights, resulting in default-like outcomes in multiple proceedings. (See Exhibit A for notification logs and Exhibit B for Plaintiff's emails addressing the missing notices.)

29. CSS's Procedural Failures

- CSS never conducted mandatory mediation, disregarded or prematurely

"closed" Plaintiff's administrative appeals, and enacted punitive measures (e.g., license suspension, passport flag) without a fair hearing.

- Plaintiff's attempts to "exhaust" internal remedies were futile because CSS refused or ignored them—making any further administrative process unavailable.

30. Gender Discrimination

- Plaintiff believes Rutherford County's system demonstrates bias against male caregivers, ignoring his stable caregiving role and refusing remote appearance options. Court officials appear predisposed to discount male primary caretakers, contravening the Equal Protection Clause.

31. Harm to Plaintiff's Career & Child's Well-Being

- Plaintiff, an entertainer, has suffered significant lost income due to canceled gigs in Tennessee—fearing arrest if he steps foot in the state. This ongoing scenario also inflicts mental stress on the minor child, who risks forced separation if Plaintiff is jailed.

32. February 25, 2025 Trial & Irreparable Harm

- Rutherford County's scheduled trial date, predating Missouri's April 25, 2025 hearing, threatens to finalize custody or support decisions that ignore the child's true home state and well-being. This outcome stands to irreparably sever the parent-child relationship.

## V. CAUSES OF ACTION

COUNT I – 42 U.S.C. § 1983: Procedural Due Process Violation

33. Plaintiff incorporates all preceding paragraphs.

34. Rutherford County, CSS, and Judge Terry Fann (in official capacity) acted under color of state law to deny Plaintiff fundamental due process—failing to stay proceedings under the UCCJEA, refusing a same-hearing purge mechanism, and withholding timely notice of hearings, violating the Fourteenth Amendment. *Mathews v. Eldridge, 424 U.S. 319; Hicks v. Feiock, 485 U.S. 624.*

35. Plaintiff's lack of notice and opportunity to respond violates *Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)*, which mandates 'notice and an opportunity to respond' prior to deprivation of a protected interest.

## COUNT II – 42 U.S.C. § 1983: Forced Separation / Entrapment

36. Plaintiff incorporates all preceding paragraphs.

37. By maintaining an active civil contempt warrant, denying remote appearances, and scheduling in-person hearings that risk immediate arrest, Defendants created a coercive trap, effectively forcing Plaintiff to either submit to jail or lose custody by default. This threatened forced separation defies *Troxel v. Granville,*

38. The interest of a parent in the companionship, care, custody, and management of his children is a fundamental liberty interest. 530 U.S. 57. *Stanley v. Illinois, 405 U.S. 645, 651 (1972)*

## COUNT III – Violation of Tenn. Code § 36-6-222

39. Plaintiff incorporates all preceding paragraphs by reference.

40. Tennessee law mandates a stay once another state's court is exercising custody jurisdiction. Defendants' refusal to comply deepens Plaintiff's constitutional injuries.

## COUNT IV – Monell Liability Against Rutherford County

41. Plaintiff incorporates all preceding paragraphs by reference.

42. Under Monell v. Dep't of Soc. Servs., 436 U.S. 658, Rutherford County can be liable for policies/customs that cause constitutional harm. The county's systemic practices—failing to rectify e-file errors, ignoring UCCJEA stay requirements, and disallowing remote purge hearings—culminated in a consistent denial of Plaintiff's due process.

## COUNT V – 42 U.S.C. § 1983 (Color of State Law) – Attorneys Cope & Driver

43. Plaintiff incorporates all preceding paragraphs by reference.

44. Though Cope and Driver appear as private counsel, Cope's official capacity as City Attorney for La Vergne and their continued filings post-UCCJEA challenge create a close nexus with state actors. Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288 (2001).

45. By advancing Tennessee proceedings and enabling selective notice failures, Cope and Driver acted under color of law, depriving Plaintiff of fundamental due process and parental rights.

46. Under Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982), private actors become state actors when they 'jointly participate' with state officials in unconstitutional conduct, as Cope and Driver have done here.

## VI. RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests:

1.  Declaratory Judgment

    - Declaring that Defendants' actions—pressing ahead with custody/support hearings despite a valid Missouri UCCJEA filing, refusing a same-proceeding purge option, and systematically denying notice—violate the Fourteenth Amendment.

2.  Injunctive Relief

    - Preliminary and Permanent Injunction halting any Tennessee trials or hearings until the Missouri court rules on jurisdiction, suspending contempt-based arrest warrants, and preventing forced custody changes absent constitutionally valid procedures.

3.  Compensatory & Punitive Damages (Allocated)

### Government Defendants

1.  Rutherford County: $50 million compensatory, $100 million punitive. These amounts reflect wide-scale institutional harm—Plaintiff has lost tens of thousands of dollars in gig opportunities, brand partnerships, network opportunities, professional relationships plus emotional distress. Punitive damages aim to deter repeated misconduct that may harm other fathers.

2.  Tennessee Dept. of Human Services / CSS:

    - $50 million compensatory, $100 million punitive, due to CSS's refusal to process appeals/mediation and its punitive actions without adequate notice—leading to financial, reputational, and emotional losses.

### Individual Defendants

3.  Judge Terry Fann (Official Capacity: Injunctive/Declaratory Relief Only)

    - Immediate Quashing of Civil Contempt Warrant

        A. An order directing that any civil contempt warrant or bench warrant issued under Judge Fann's authority be immediately quashed, ensuring Plaintiff can safely enter Tennessee (including attending any federal court proceedings) without risk of arrest stemming from the unconstitutional contempt process.

B. A formal injunction prohibiting Defendants from re-issuing or enforcing any contempt-related warrant unless Plaintiff is afforded a single, combined hearing to purge contempt in compliance with *Hicks v. Feiock, 485 U.S. 624.*

- Vacatur of Unconstitutional Orders

C. A declaration that all orders, findings, or rulings entered by Judge Fann against Plaintiff—stemming from the alleged denial of timely notice, refusal of remote hearings, and two-step contempt trap—be vacated or declared null, in light of the systemic due process violations documented herein.

D. An injunction barring further enforcement of any prior orders or directives from Judge Fann that were issued without adequate notice or in defiance of the UCCJEA stay obligation.

- Compliance with Due Process & UCCJEA

E. A requirement that any future rulings or hearings under Judge Fann's purview must include (a) timely notice to Plaintiff, (b) remote participation when traveling risks immediate arrest, and (c) recognition of Missouri's UCCJEA jurisdiction until that court renders a final determination.

F. A judicial declaration affirming that the two-step contempt approach—forcing Plaintiff to attend in person first to be found in contempt, then scheduling a separate purge hearing—violates Plaintiff's procedural due process rights.

4. Attorney Evan Cope (Individual & Official Capacity): $5 million compensatory, $10 million punitive, reflecting his role in continuing filings after UCCJEA notice, orchestrating e-file irregularities, and leveraging official status to disadvantage Plaintiff.

5. Attorney Katharine Driver (Individual Capacity): $2 million compensatory, $5 million punitive, for filing motions post-UCCJEA challenge and contributing to the no-notice scenario.

Punitive damages are justified due to the reprehensible and intentional deprivation of Plaintiff's constitutional rights, the profound harm to Plaintiff's parental relationship and livelihood, and the urgent need to deter Rutherford County and its agents from weaponizing civil process against disfavored litigants. Defendants' pattern of procedural entrapment, selective notice failures, and retaliatory enforcement—particularly against a pro se father—demonstrate the kind of egregious misconduct that *Gore* and subsequent cases have recognized as warranting punitive awards to punish and deter

Further Relief

    1.    Attorneys' Fees & Costs

- Award of litigation expenses and any applicable attorney's fees under 42 U.S.C. § 1988, acknowledging Plaintiff's pro se status but seeking compensation for out-of-pocket costs.

- Such additional relief as this Court deems just and proper, including confirmation that Plaintiff remains the child's primary caretaker absent a valid, constitutional adjudication, and an acknowledgment of the psychological harm forced separation would cause.

## CLOSING STATEMENT

I stand before this Court as a father, not merely a litigant. My greatest fear is not financial ruin or professional setback—it is the profound, potentially irreversible harm that forced separation from my child would inflict upon her emotional well-being. The Supreme Court has long recognized that parents have a fundamental right to the care, custody, and companionship of their children. See Troxel v. Granville, 530 U.S. 57 (2000). Yet, through actions that ignore jurisdictional mandates under the UCCJEA (Tenn. Code § 36-6-222), deny notice as required by Greene v. Lindsey, 456 U.S. 444 (1982), and weaponize civil contempt contrary to Hicks v. Feiock, 485 U.S. 624 (1988), Rutherford County has turned this sacred bond into a bargaining chip.

I did not choose to appear pro se out of convenience. Rather, I did so because the very system designed to protect families has repeatedly silenced my voice: withholding hearings, issuing late or falsified notices (Exhibits A–C), and prioritizing expediency over due process as articulated in Mathews v. Eldridge, 424 U.S. 319 (1976). When a parent must choose between risking arrest to attend a hearing or safeguarding the child's stability, the Constitution loses to coercion.

This case is not about evading responsibility; it is about demanding accountability. Accountability for a system that disregards federal jurisdiction and the UCCJEA's cooperative framework. Accountability for procedural maneuvers that punish parents—particularly fathers—who dare to advocate for their rights, as recognized in Stanley v. Illinois, 405 U.S. 645 (1972). Accountability for the emotional toll that threats of arrest and sudden court orders place on a child, whose best interests are paramount under Santosky v. Kramer, 455 U.S. 745 (1982).

I urge this Court to see past the paperwork and recognize the human cost of these due process violations. By halting Tennessee's unconstitutional proceedings under Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013), and affirming Missouri's rightful jurisdiction under the UCCJEA, you uphold not merely my individual rights, but the rights of every parent who fears a system that values process over people. Our children deserve better than a court battle hinged on technicalities; they deserve the reassurance that justice, not intimidation, guides their future.

# VERIFICATION

I, Joshua Gracin, under penalty of perjury under the laws of the United States of America, declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

Date: __1-30-2025__

Signature: *Joshua Gracin*




JOSH GRACIN
(629) 333-9560
219 N 1ST ST
PACIFIC MO 63069

SHIP CLERK OF COURT
TO: 719 CHURCH ST

NASHVILLE TN 37203-6940

1 LBS      1 OF 1
SHP WT: 1 LBS
DATE: 01 FEB 2025

RECEIVED
FEB 04 2025
US DISTRICT COURT
MID-DIST TENN

TN 371 9-02

UPS NEXT DAY AIR      1
TRACKING #: 1Z 977 8Y5 24 2031 6676

BILLING: P/P
SIGNATURE REQUIRED

REF #1: 2/1/25 EG